# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

POM of Pennsylvania, LLC,      :
                Petitioner      :
                           :  No. 222 M.D. 2022
      v.                   :
                           :  Argued: June 6, 2023
Bureau of Liquor Control Enforcement;  :
Scott Miller; James Jones; Scott      :
Berdine; and Pennsylvania Gaming    :
Control Board,                 :
                Respondents  :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

## _**OPINION NOT REPORTED**_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: July 10, 2023

        This is an action filed in our original jurisdiction by Petitioner POM of Pennsylvania, LLC (POM) against Respondents the Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau), Scott Miller (Miller), James Jones (Jones), Scott Berdine (Berdine) (collectively, Bureau Respondents), and the Pennsylvania Gaming Control Board (Board) (all together, Respondents). POM brings claims for alleged injury to its reputation in violation of article I, section 1 of the Pennsylvania Constitution.[1] Now before this Court for disposition are the Bureau Respondents' and the Board's preliminary objections to POM's Second Amended Petition for Review in the Nature of a Complaint (Second Amended PFR). For the reasons that follow, we sustain the first of the Bureau Respondents' preliminary

---

[1] Pa. Const. art. I, § 1.

objections, defer ruling on any other preliminary objections, and stay this action as set forth below.

## I. FACTS AND PROCEDURAL HISTORY

### A. This Action

POM initiated this action by filing original and first amended petitions for review in April 2022 against only the Bureau Respondents. After the Bureau Respondents filed preliminary objections to POM's First Amended Petition for Review, POM filed its Second Amended PFR on June 9, 2022, adding the Board as a respondent. Therein, POM alleges the following material facts.

POM is a Pennsylvania distributor of electronic games marketed with the trade name "Pennsylvania Skill" games (POM Games or Games). The POM Games offer players the ability to win on every play at least 105% of the player's paid consideration for playing the game. Through in-state operators, POM places the Games in businesses like bars, restaurants, convenience stores, and fraternal organizations, many of which also sell or serve alcohol. (Second Amended PFR ¶¶ 9-10, 17.)

Regarding the Bureau Respondents specifically, POM alleges that, beginning in 2018, the Bureau Respondents "began a program of targeted harassment towards POM and its business partners." (Second Amended PFR ¶ 34.) The alleged harassment included making private and public statements asserting the illegality of the POM Games to businesses, fraternal organizations, and other establishments that might house the POM Games for use by patrons. (*Id.* ¶¶ 35-40.) POM also alleges that the Bureau Respondents have made "openly false statements" concerning the Games in legal proceedings and documents, have maligned the Games to local district attorneys' offices, and have acted in concert with casino

2

lawyers and lobbyists to disparage the Games and tortiously interfere with POM's business. (*Id.* ¶¶ 42-67.) POM contends that the Bureau Respondents have taken these actions without having ever "articulated a factual or legal basis for maintaining that the [Games] [are] [ ] illegal gambling device[s]." (*Id.* ¶ 71.) According to POM, the Bureau Respondents in fact believe that the Games are legal in Pennsylvania, and their ongoing assertions that the Games are *per se* illegal are designed only to destroy POM's business reputation. (*Id.* ¶¶ 73-74.)

Regarding the Board, POM contends that although the Board historically has taken the position that the Games are not predominantly games of chance and, therefore, are not illegal gambling devices, the Board changed its legal position "due to pressure and lobbying" from several Pennsylvania casinos. (*Id.* ¶¶ 81-82.) Having changed its legal position, the Board now allegedly "steers grant money to district attorneys and assists in coordinating the training of county detectives from those district attorney[s'] offices who agree to seize the [POM Games] and prosecute the locations lawfully possessing the [Games]." (*Id.* ¶ 87.) POM further alleges that the Board has "explicitly maligned POM and the [Games] as a basis to argue for denial of gaming licenses." (*Id.* ¶ 90.) Accordingly, POM argues that the Board not only changed its legal position regarding the Games, but also now "goes out of its way to attack POM and the [Games] as a way to threaten potential [Board] applicants who might also do business with POM." (*Id.* ¶ 96.)

Based on these allegations, POM asserts a single count each against the Bureau Respondents and the Board, arguing that their conduct violates and infringes upon POM's fundamental right to reputation under article I, section 1 of the Pennsylvania Constitution, which right POM contends is self-executing. (*Id.* ¶ 100-01, 107-08.) POM seeks the following relief against both the Bureau Respondents

3

and the Board: (1) a declaration that they have violated POM's rights under article I, section 1; (2) a permanent injunction enjoining all Respondents from "publicly and privately declaring the [Games] to be *per se* illegal, unless the [Games are] so determined judicially or by statute"; and (3) a permanent injunction enjoining them from "targeting POM" with selective prosecutions, in licensure applications, or "in any other manner." (*Id.*, pp. 26-27, 28-29.)

The Bureau Respondents filed their preliminary objections on July 5, 2022, and the Board filed its preliminary objections on July 14, 2022. By order exited on July 15, 2022, the Court stayed discovery pending disposition of both sets of preliminary objections.

### B.    Other POM Actions

In 2018, POM filed two other relevant actions in our original jurisdiction. *See POM of Pennsylvania, LLC v. Department of Revenue* (Pa. Cmwlth., No. 418 M.D. 2018) (2018 Revenue Case), and *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement* (Pa. Cmwlth., No. 503 M.D. 2018) (2018 Bureau Case) (collectively, 2018 Cases). In both 2018 Cases, POM seeks declarations that the Games are not *per se* illegal gambling devices pursuant to Section 5513 of the Crimes Code, 18 Pa. C.S. § 5513. It also seeks preliminary and permanent injunctive relief precluding the respondents in both actions from seizing the POM Games as illegal gambling devices or maintaining adverse actions against POM regarding the Games. Certain respondents in both 2018 Cases (the Department of Revenue and the Bureau) filed counterclaims asserting that the Games fall under the regulatory framework of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa. C.S. §§ 1101-1904 (Gaming Act). In *en banc* decisions filed November 20, 2019, we concluded in both 2018 Cases

4

that the Games do not fall under the regulatory framework of the Gaming Act and, accordingly, are not subject to regulation by the Board. *See POM of Pennsylvania, LLC v. Department of Revenue*, 221 A.3d 717 (Pa. Cmwlth. 2019); *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement* (Pa. Cmwlth., No. 503 M.D. 2018, filed November 20, 2019) (together, *POM I*).

Soon after our decisions in *POM I*, on December 12, 2019, POM filed in the 2018 Bureau Case its Emergency Application for Preliminary Injunction in which it argued that the Bureau instituted a retaliatory "intimidation campaign" of targeting and raiding establishments that host the Games in an attempt to damage POM's business reputation (Emergency Application). In the Emergency Application, POM sought to enjoin the Bureau from seizing any Games or commencing, continuing, instituting, or maintaining any adverse actions or proceedings against POM regarding the Games under the auspices of Section 5513 of the Crimes Code. POM asserted that the Bureau's seizures of the Games were part of the Bureau's efforts to irreparably harm POM's reputation and that the Bureau's conduct was, in fact, causing reputational harm and loss of good will in violation of POM's constitutional rights to property and reputation. (Emergency Application, No. 503 M.D. 2018, filed December 12, 2019, at 9-10, 12, 19, 21-22.) After hearing and briefing, this Court, by a single-Judge memorandum and order authored by Judge Ceisler, denied the Emergency Application. In pertinent part, Judge Ceisler opined as follows:

> This Court recognizes that unless, or until, [the POM Games] are considered to be illegal gambling devices under the Crimes Code, POM may suffer harms to its reputation and property interests as a result of [the Bureau's seizures of the Games.] However, . . . as long as

5

> POM is not specifically targeted, this Court finds no improper conduct by the [Bureau] that warrants the imposition of an injunction at this time.

*POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement* (Pa. Cmwlth., No. 503 M.D. 2018, Memorandum and Order filed January 21, 2020) (Ceisler, J.), slip op. at 7.

Soon after the filing of *POM I* and Judge Ceisler's decision, several Pennsylvania casinos (Casinos) and the Board sought leave to intervene in both 2018 Cases. Significant litigation followed, and the intervention petitions remain pending to date. Then, in February 2023, POM discontinued the 2018 Revenue Case. The Department of Revenue, the Board, and the Casinos filed appeals to the Pennsylvania Supreme Court challenging *POM I*'s determination that the Gaming Act does not apply to the Games. Those appeals remain pending. Thus, at present, only the 2018 Bureau Case remains active in this Court. The pending petitions to intervene (a third was filed by the City of Philadelphia in April 2023) were scheduled for hearing on June 9, 2023, but upon request for a continuance by the Bureau, the hearing is now scheduled for July 19, 2023. A merits hearing will occur sometime thereafter.

POM also is litigating numerous other state court actions (chiefly return of property and forfeiture cases), all of which involve the status of the Games under the Crimes Code. Several of those cases have been decided (in POM's favor) at the trial court level, and two of the decisions are now on appeal to the Pennsylvania Superior Court. *See* POM's Application to Compel, 2018 Bureau Case, filed May 15, 2023, ¶ 8 & n.1. If those appeals proceed, the Superior Court presumably will render Commonwealth-wide decisions adjudicating whether the POM Games are *per se* illegal under the Crimes Code.

6

## II.    PRELIMINARY OBJECTIONS

### A.    The Bureau's Preliminary Objections

The Bureau Respondents lodge five preliminary objections to the Second Amended PFR:

>   (1)    This action must be dismissed, or at least stayed, pending disposition of the 2018 Bureau Case (*lis pendens*) (Pa. R.Civ.P. 1028(a)(6));
>
>   (2)    POM cannot establish all of the elements necessary for injunctive relief (demurrer) (Pa. R.Civ.P. 1028(a)(4));
>
>   (3)    POM cannot assert, pursuant to the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531-7541, a claim for damage to reputation under article I, section 1 of the Pennsylvania Constitution (demurrer) (Pa. R.Civ.P. 1028(a)(4));
>
>   (4)    POM has a full, complete, and adequate non-statutory remedy at law in its ability to litigate return of property and forfeiture actions involving the Games (Pa. R. Civ.P. 1028(a)(8)); and
>
>   (5)    The Second Amended PFR contains scandalous and impertinent matter that should be stricken (Pa. R.Civ.P. 1028(a)(2)).

### B.    The Board's Preliminary Objections

The Board lodges six preliminary objections to the Second Amended PFR:

>   (1)    POM may not assert a claim pursuant the Declaratory Judgments Act for damage to reputation in violation of article I, section 1 of the Pennsylvania Constitution (demurrer) (Pa. R.Civ.P. 1028(a)(4));
>
>   (2)    POM cannot establish all of the necessary elements for injunctive relief (demurrer) (Pa. R.Civ.P. 1028(a)(4));

7

(3) POM has not established that the Board is "targeting" POM (demurrer) (Pa. R.Civ.P. 1028(a)(4));

(4) This Court lacks subject matter jurisdiction because POM failed to exhaust available administrative remedies by failing to seek intervention in the Board's licensure proceedings (Pa. R.Civ.P. 1028(a)(1));

(5) POM has a full, complete, and adequate non-statutory remedy at law in seeking to intervene in the Board's licensure proceedings (Pa. R.Civ.P. 1028(a)(8)); and

(6) POM's Second Amended PFR contains scandalous and impertinent matter (Pa. R.Civ.P. 1028(a)(2)).

## III. DISCUSSION

### A. *Lis Pendens*

The Bureau Respondents first assert that this action should be dismissed, or at least stayed, pending final adjudication of the 2018 Bureau Case because the underlying legal issue in that case, the Games' legality under the Crimes Code, controls the disposition in this action. We agree that a stay is appropriate in these circumstances.

We have described the doctrine of *lis pendens* as follows:

The doctrine of *lis pendens*, [i.e.,] pendency of a prior action, applies when, in the previously filed case, the parties are the same, the rights are the same and the requested relief is the same. The doctrine of *lis pendens* protects defendants from the harassment of having to defend several suits on the same cause of action at the same time.

The application of *lis pendens* is purely a question of law. The [C]ourt must determine whether the causes of action arose from the same transaction or occurrence, that is,

8

whether the claims involve a common factual background or common legal question.

*Swift v. Radnor Township*, 983 A.2d 227, 234 (Pa. Cmwlth. 2009) (internal citations and quotations omitted). "The party raising the defense of [*lis pendens*] can ask that the action in which the defense is being raised be abated, that it be stayed pending the outcome of the prior litigation, or that the actions be consolidated." *Virginia Mansions Condominium Association v. Lampl*, 552 A.2d 275, 277 (Pa. Super. 1988). Where a party seeks dismissal of a claim or action based on *lis pendens*, the three-pronged "identity" test must be applied strictly. *Hillgartner v. Port Authority of Allegheny County*, 936 A.2d 131, 137-38 (Pa. Cmwlth. 2007).

Here, only the Bureau Respondents preliminarily object to the Second Amended PFR on the ground of *lis pendens*. Nevertheless, although the complained-of actions of the Bureau Respondents and the Board are different, POM alleges the same reputational injury and seeks the same substantive relief against all Respondents. Thus, if *lis pendens* applies, it applies to the entire action and requires either its dismissal or stay.

1.    Identity of Parties

This element is substantially met. POM is the petitioner in both this and the 2018 Bureau Case, and the Bureau is a named respondent in both cases. Although POM also brings this action against several individual Bureau officers and the Board, those additional Respondents do not destroy the necessary identity of parties. The claims against both the Board and the individual Bureau Respondents are based on the same asserted constitutional rights, and both turn on the same legal question, namely, whether the POM Games are illegal gambling devices under the Crimes Code. The Board also has sought to intervene in the 2018 Bureau Case and has appealed (as a potential intervenor) this Court's decisions in *POM I*. Thus,

9

although the parties in these two cases are not strictly identical, they are substantially identical to a degree that justifies a *lis pendens* stay.

## 2. Identity of Rights

This element also is substantially met. Again, although the 2018 Bureau Case involves the single question of whether the POM Games are *per se* illegal gambling devices and this action involves an alleged injury to reputation under article I, section 1 of the Pennsylvania Constitution, both cases turn on the question of the Games' legality and the alleged harm that the Bureau's (and the Board's) conduct allegedly is inflicting on POM's business and reputation interests. Thus, although styled differently, the claims in both cases involve similar legal questions and seek to preserve the same rights and interests.

## 3. Identity of Requested Relief

Although POM argues that it has not filed an action pursuant to the Declaratory Judgments Act, it nevertheless seeks both declaratory and injunctive relief under article I, section 1 of the Pennsylvania Constitution. The claims are based on alleged conduct by both the Bureau and the Board in which they directly or implicitly have stated or publicized that the Games are *per se* illegal. The relief POM requests is broad and all-encompassing and extends far beyond a mere declaration that a violation of article I, section 1 has occurred. POM also requests that the Bureau and the Board permanently be enjoined from (1) "publicly and privately declaring" the Games to be *per se* illegal unless they are judicially or legislatively so determined to be, (2) "targeting" POM in selective prosecutions (Bureau), and (3) targeting POM in any manner, including in the processing of licensure applications (Board). (Second Amended PFR at 26-27, 28-29.) All of this relief centers on the legality of the POM Games and the Respondents' suggestions

10

or "declarations," by words or conduct, that the Games are *per se* illegal. In its petition for review in the 2018 Bureau Case, POM seeks declarations that the Games are legal and that the Bureau lacks any authority to seize, or initiate any criminal or administrative proceedings regarding, the Games. POM also requests injunctive relief precluding the Bureau from taking those actions.

Thus, both actions necessarily require this Court to determine whether the Games are *per se* illegal. Again, although POM styles the relief in the two actions differently, the underlying legal question and the declarations and injunctive relief that will follow are, in substance, the same.

### 4. Application

If strictly applied, the three-part identity test for the application of *lis pendens* might not be satisfied here. But, the three required identities have been established sufficiently to justify staying this action until the 2018 Bureau Case is resolved on the merits. After the issue of the Games' legality is decided (either in that action or in one of the other cases now on appeal to the Superior Court), this Court may proceed to decide the remainder of the preliminary objections and, if necessary, the merits of POM's claims. Proceeding to decide even the parties' remaining preliminary objections at this point would be premature given that, if the Games are determined to be illegal gambling devices, the entire action likely will be rendered moot. *See* Bureau Br. at 18. If the POM Games are determined to be legal, we would then first dispose of the remaining preliminary objections to determine if POM has stated viable claims for relief under article I, section 1.

Our decision to stay this action is further justified by the fact that POM already has had an opportunity to seek injunctive relief for alleged harm to its reputation. In its Emergency Application filed in the 2018 Bureau Case, POM

11

asserted that the Bureau's seizure of the Games and "intimidation campaign" was driven by a directed and concerted effort by the Bureau and others to damage POM's reputation and business interests in the Commonwealth. POM therefore sought injunctive relief against the Bureau precluding it not only from seizing the Games based on their alleged illegality, but also from "commencing, continuing, instituting, or maintaining" any adverse actions or proceedings against POM based on the Games' illegality, in part to preserve POM's reputational interests. Judge Ceisler denied the application and determined that any incidental injury inflicted on POM's reputational interests by the non-targeted seizure of the POM Games did not justify preliminary injunctive relief. Here, POM seeks similar relief: enjoining both the Bureau and the Board from "declaring" publicly or privately that the games are *per se* illegal until otherwise determined by legislative or judicial pronouncement.[2] Given that several cases now are pending in which such a "pronouncement" will be made, we conclude that a stay of this action is the best course to prevent duplicative litigation.

## IV.   CONCLUSION

The disposition now of any preliminary objections other than that identified above would be premature given the pendency of several actions that will decide the underlying and controlling question of the POM Games' legality. We accordingly sustain the Bureau Respondents' first preliminary objection based on *lis pendens*, defer ruling on any of Respondents' remaining preliminary objections, and stay this action until the POM Games' legality is adjudicated either in the 2018

---

[2] There also will be little to no practical prejudice to any of the parties if this action is stayed. Discovery already has been stayed until after disposition of Respondents' preliminary objections. The pendency of the 2018 Bureau Case also provides a forum in which any of the parties may seek (and have sought) any necessary interim relief.

12

Bureau Case or one of the several cases on appeal in the Superior Court. We hasten to add, however, that nothing in this opinion should be construed to sanction any of Respondents' alleged conduct. To the extent that such conduct continues and the POM Games ultimately are determined to be legal, Respondents proceed at their own risk subject to any remedies to which POM might be entitled in this action.[3]

Finally, we note that the Bureau Respondents filed a motion to stay discovery on June 10, 2022. POM filed an answer opposing the motion on June 27, 2022. On July 5, 2022, POM filed an application to submit an amended answer to the motion. The Court granted the Bureau Respondents' motion to stay discovery on July 15, 2022, but did not otherwise rule on POM's application to submit an amended answer. Although the Court already has granted the Bureau Respondents' motion to stay discovery, we nevertheless herein grant POM's application to submit its amended answer to ensure the accuracy and completeness of the record.

_____
PATRICIA A. McCULLOUGH, Judge

---

[3] Additionally, nothing in this opinion and the corresponding stay should be construed to prevent the parties from executing a stipulated status quo order in which they agree to mutually-acceptable terms and conditions that will govern their conduct pending final disposition on the merits.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

POM of Pennsylvania, LLC,          :
                  Petitioner      :
                              :   No.  222 M.D. 2022
              v.              :
                              :
Bureau of Liquor Control Enforcement;  :
Scott Miller; James Jones; Scott       :
Berdine; and Pennsylvania Gaming   :
Control Board,                 :
                Respondents   :

## ***ORDER***

AND NOW, this 10th day of July, 2023, upon consideration of the preliminary objections filed by all Respondents, it hereby is ORDERED that the preliminary objection of Respondents Bureau of Liquor Control Enforcement, Scott Miller, James Jones, and Scott Berdine based on the doctrine of *lis pendens* is SUSTAINED, in part. This action is STAYED in its entirety pending a final appellate determination of the POM Games' legality under Section 5513 of the Pennsylvania Crimes Code, 18 Pa. C.S. § 5513. Thereafter, the Court will proceed to decide, as appropriate, the remaining preliminary objections of all Respondents. It further is ORDERED that Petitioner POM of Pennsylvania, LLC's Application to Submit Amended Answer filed July 5, 2022, is GRANTED, and the Amended Answer attached as Exhibit A to POM's Application shall be deemed to have been filed as of July 5, 2022.

 

_____
PATRICIA A. McCULLOUGH, Judge